**Heinz HABER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 532–84T.**

United States Claims Court.

June 26, 1985.

E.O.C. Ord, San Francisco, Cal., for plaintiff.

Neil V. Birkhoff, Washington, D.C., with whom was Asst. Atty. Gen., Glenn J. Archer, Jr., for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiff Heinz Haber ("plaintiff"), a U.S. citizen who currently resides in West Germany, through Hans Lasker, a certified public accountant, seeks a refund of foreign tax credits from the Internal Revenue Service (the "IRS"). Defendant has moved over plaintiff's opposition to dismiss the complaint for lack of jurisdiction pursuant to RUSCC 12(b)(1). Argument has been heard. The issues for decision are whether a notice of disallowance, based on failure to file the claim within three years, triggers the two-year limitations period within which suit must be filed in court, although the courts subsequently rule that the filing period for such claims was ten years, and whether the actions of the IRS, including issuing a second notice of disallowance, toll the limitations period.

## FACTS

For purposes of a motion to dismiss for lack of subject matter jurisdiction, the facts alleged by plaintiff are not regarded as established. *See McNutt v. General Motors Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Bettini v. United States*, 4 Cl.Ct. 755, 757 (1984) (order denying motion for summary judgment). Because the parties have submitted affidavits, declarations, and other documents outside the complaint, however, the motion will be treated as one for summary judgment pursuant to RUSCC 12(b), *but see Fidelity Deposit & Construction Co. v. United States*, 2 Cl.Ct. 137, 142 (1983), so that plaintiff can have the benefit of all applicable presumptions, inferences, and intendments accorded an opponent of summary judgment. *Johnson Controls, Inc. v. United States*, 8 Cl.Ct. 359, 365–66 (Cl.Ct.1985) (citing cases).

On June 8, 1977, plaintiff filed claims for refunds with the IRS for the tax years 1970 and 1971. He based these claims on section 904(a) of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 904(a) (1982), which allows for the carry back or carry forward of excess foreign tax credits. These excess foreign tax credits arose as a result of increased tax liability imposed upon plaintiff by the West German taxing authorities for the years 1972–1974. I.R.C. § 901 allows an individual, upon timely election, to either deduct or take tax credits for taxes paid outside the United States.

In response to plaintiff's claims, the IRS sent a notice of disallowance on November 14, 1977, to Mr. Lasker, plaintiff's accountant. The IRS denial was grounded on

I.R.C. § 6511(a), which sets the statutory limitations period at the later of three years from the date of filing the original return or two years from the date the claimant paid the tax. Seven exceptions to this section exist, one of which, I.R.C. § 6511(d)(3)(A), excepts foreign tax credits. This section provides:

(3) *Special rules relating to foreign tax credit*

(A) *Special period of limitation with respect to foreign taxes paid or accrued*

If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country ... in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.

At the time plaintiff filed his claim, the IRS took the position that the three-year limitations period applied and that the ten-year period only existed for purposes of credit adjustment, *i.e.*, a taxpayer must still file within the section 6511(a) period, but once a claim was filed, the option of an extended period became available.

Mr. Lasker urged the application of the ten-year period to his client's claims. During this time he believed that the IRS withdrew the disallowance "so ... [he] could continue to pursue the matter at an administrative level...." Declaration No. 1 of Hans Lasker, May 20, 1985, ¶ 5.b. In 1978, while Mr. Lasker continued to pursue plaintiff's claims, the United States Court of Claims in *Hart v. United States*, 218 Ct.Cl. 212, 585 F.2d 1025 (1978), and the Ninth Circuit Court in *United States v. Woodmansee*, 578 F.2d 1302 (9th Cir.1978), held that the ten-year statute of limitations applied in such cases. Nonetheless, plaintiff was issued a proposed notice of disallowance which was sent to Mr. Lasker on June 25, 1982. In this letter the IRS adhered to its position that the three-year limitations period applied, advising that "[t]he regulation has not been rescinded, nor has the Commissioner acquiesced in any of the fol-

lowing Court of Claims cases [including *Hart v. United States* ] ...." Subsequently, on October 26, 1982, the IRS issued a formal notice of claim disallowance for the year 1970. Receipt of this notice prompted plaintiff to file his complaint in this court. The filing date, October 17, 1984, falls within two years of the mailing of the second disallowance notice.

## DISCUSSION

██ Defendant's motion to dismiss hinges on the jurisdictional question of the applicable limitations period for filing a complaint in response to a notice of disallowance. I.R.C. § 6532(a) provides:

(a) *Suits by taxpayers for refund*

(1) *General rule*

No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun ... after the expiration of 2 years from the date of mailing ... by the Secretary ... to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

The notice of disallowance that issued on November 14, 1977, was based on the position, soundly rejected one year later by the Court of Claims in *Hart v. United States*, 218 Ct.Cl. 212, 585 F.2d 1025, that I.R.C. § 6511(d)(3)(A) did not provide a ten-year limitations period for seeking refund of claims like plaintiff's. That the IRS was wrong, however, does not transmute a valid notice of disallowance into a notice that is ineffective for starting the period within which suit must be filed. Although the IRS may not be able to perpetuate its reading of I.R.C. § 6511(d)(3)(A) after *Hart* and *United States v. Woodmansee*, 578 F.2d 1302, by issuing disallowances for foreign tax credits filed later than the period provided for in section 6511(a), the disallowance here was before the judiciary made rulings contrary to the IRS position, and plaintiff was required to act on it.

██ If a claim against the Government is not filed within the two-year period, the

court lacks jurisdiction to hear the suit unless a claimant establishes circumstances that toll the statute of limitations. *E.g., Ambrose v. United States,* 4 Cl.Ct. 352, *aff'd mem.,* 738 F.2d 453 (Fed.Cir.1984). In that case plaintiff claimed that his ex-wife forged his name on an original tax return for 1976 and proceeded to file an amended individual return for 1976. In June 1978 the IRS disallowed his claim. Plaintiff finally acted on this notice in March 1983. The trial court held that the two-year statute of limitations barred plaintiff's claim since he filed four and one-half years after the limitations period began and no "pertinent statutes or circumstances" could be found which would toll the statute of limitations. 4 Cl.Ct. at 355. Plaintiff's situation in the case at bar reflects similar circumstances in that his accountant received the original notice of disallowance in November 1977, yet no action occurred until October 1984. The distinction between *Ambrose* and this case is the IRS's alleged involvement in the seven-year delay present here. Plaintiff claims a reliance upon the IRS's actions in an attempt to estop it from invoking the limitations period.

I.R.C. § 6532(a)(4) provides: "Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun." In *Beardsley v. United States,* 126 F.Supp. 775 (D.Conn.1954), plaintiffs in 1950 filed a claim for a refund of a portion of their 1946 taxes, which the IRS disallowed in April 1951. Their attorney thereafter communicated with the Acting Assistant Collector of Internal Revenue to inquire why the IRS failed to allow an opportunity for protest. The officer told them to ignore the notice since a clerical error had been made. Based on the officer's statement, plaintiffs ignored the notice. The IRS, however, maintained its position and sent plaintiffs another notice of

disallowance in June 1953. Plaintiffs then filed their complaint arguing that the Government had withdrawn the first notice in May 1951 by the statement of the Assistant Collector. The court agreed, holding that the "[c]ommissioner in effect withdrew the original notice by going back in the process to a stage prior to the time for giving notice." 126 F.Supp. at 777. Although the facts in *Beardsley* closely parallel plaintiff's situation, the district court's decision is not binding. *See Greenberg v. United States,* 1 Cl.Ct. 406, 407 (1983). In *Southeast Bank of Orlando v. United States,* 230 Ct.Cl. 277, 676 F.2d 660 (1982), and *Heath v. United States,* 219 Ct.Cl. 582 (1979), the Court of Claims validated a second notice of disallowance which plaintiffs had received within two years of the first notice. In this case plaintiff received his second notice five years after the first. The court declines to follow *Beardsley* since the Court of Claims never took occasion to consider reviewing a second notice of disallowance sent after expiration of the two-year period for filing suit.

Moreover, whereas in *Beardsley* the parties stipulated that the Acting Assistant Collector told the Beardsleys to ignore the notice because of a clerical error, here the parties have not stipulated to any facts. Mr. Lasker merely asserts that "auditors in Washington, D.C.[,] and personnel in the Philadelphia IRS Service Center where foreign taxpayers file returns" "[led] [him] to believe that the notice, dated November 14, 1977, ... had been withdrawn and an extension granted so [he] could continue to pursue the matter on an administrative level." Lasker Decl. No. 1 ¶¶ 5.a., b.[1] "It is a settled principle of law that the United States is not bound by the unauthorized acts of its agents, that it is not estopped to assert the lack of authority as a defense and that persons dealing with an agent of the government must take notice of the limitations of his authority." *Bornstein v. United States,* 170 Ct.Cl. 576, 582, 345 F.2d

---

1. The only record of a conversation with the IRS appears in a letter dated January 10, 1978, in which Mr. Lasker states that one person he

contacted "had no actual knowledge of this case and was not in a position to give specific information." This may refer to an initial inquiry.

558, 562 (1965) (citing, *inter alia, Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947)).

Plaintiffs in *Bornstein* appear to have had a more compelling argument because they placed reliance on statements made by a Conference Reviewer in the IRS's Coordinating and Advisory Section of the Practice and Procedure Division. The reviewer remained silent as to his status and position of authority. The court held that the Government could not be estopped from asserting the lack of authority defense. *United States v. Willis*, 164 F.2d 453, 455 (4th Cir.1947), succinctly states the rule: "He who deals with an agent of the government must look to his authority, which will not be presumed but must be established. He cannot rely upon the scope of dealing or apparent authority as in the case of a private agent." (Citations omitted.) Mr. Lasker's statements are insufficient to raise an issue as to whether an authorized employee of the IRS led him to ignore the November 1977 notice of disallowance. This inability to point to an authorized statement would preclude plaintiff's estoppel claim, if *Beardsley* were deemed controlling, which it is not.[2]

▮ Plaintiff posits an argument based on a "formal reconsideration," which he claims extended the limitations period and thereby caused no injury to public policy. He draws his authority from a series of cases which held that the IRS's actions effectively estopped the Government from

invoking the statute of limitations as a defense. *See Miller v. United States*, 500 F.2d 1007 (2d Cir.1974); *Southeast Bank of Orlando v. United States*, 230 Ct.Cl. 277, 676 F.2d 660; *Heath v. United States*, 219 Ct.Cl. 582. In each of these cases, however, the plaintiff-taxpayer received a second "notice of disallowance" within two years after the first, which led the courts to find an extended limitations period.

*Miller v. United States* articulated the touchstone of these decisions as a two-pronged analysis: Plaintiff's belief that there has been a formal reconsideration must be reasonable; and the relationship between the IRS and the taxpayer should be devoid of collusion. In the present case, there appears to be no sign of collusiveness, but plaintiff's actions seem wholly unreasonable considering the time span between the first and second notices. Plaintiff points to the disallowance notice dated October 26, 1982,[3] as evidence of the reasonableness of his belief. It is well settled that "[u]nless a law has been repealed or declared unconstitutional by the courts, it is a part of the supreme law of the land and no officer or agent can by his actions or conduct waive its provisions or nullify its enforcement." *Montilla v. United States*, 198 Ct.Cl. 48, 64, 457 F.2d 978, 987 (1972). In *Montilla* plaintiff claimed that a Senior Army Advisor told him not to worry about receiving his retirement pay since he had acquired the requisite points. Subsequently, in reliance upon this information, plaintiff applied for his retirement pay, but the Army denied his application on the

---

**2.** Plaintiff himself may also not claim reliance upon Mr. Lasker's actions in the years following November 1977. "Reliance by a layperson on a[n] ... [accountant] is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute." *United States v. Boyle*, —— U.S. ——, 105 S.Ct. 687, 693, 83 L.Ed.2d 622 (1985). In *Boyle* plaintiff's attorney filed an estate tax return three months after the filing deadline. This led to the imposition of severe penalties. Plaintiff claimed that he relied on his attorney's statements and assurances that the return would be timely filed. The Supreme Court held that although mitigating circumstances exist which could toll the filing period, reliance upon one's attorney regarding filing deadlines does not

constitute "reasonable cause." 105 S.Ct. at 689. Similarly, plaintiff placed unjustifiable reliance upon Mr. Lasker's filing of a complaint. The statute unambiguously states a two-year period for filing, as does the November 1977 letter. It "requires no special training or effort to ascertain a deadline and make sure that it is met." *Id.* at 693. To stray from this basic principle is inconsistent with the public policy supporting limitations periods—the prevention of stale claims.

**3.** Because this notice referred only to the 1970 tax year, it could not operate to extend the limitations period for the 1971 claim, which was disallowed by the November 14, 1977 notice.

grounds that he failed to meet the statutory requirements. Plaintiff in this case, too, failed to meet the statutory requirements dictated by I.R.C. § 6532(a). Therefore, the statute precludes him from relying upon the second notice.

### CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Defendant's motion is granted only insofar as the complaint shall be dismissed as to tax years 1970 and 1971.

2. The parties shall file a further Joint Status Report by July 20, 1985, proposing a course of further proceedings for counts 3 and 4 pursuant to ¶ IV of the Order Governing Proceedings Before Trial entered on October 17, 1984.